### In re Dennis Harry DeMARCO and Mary Sharon DeMarco, Debtors.

#### No. 13–20729–L.

United States Bankruptcy Court, W.D. Tennessee, Western Division.

May 10, 2013.

---

James E. Bailey, III, Butler Snow O'Mara Stevens & Cannada PLC, Memphis, TN, for Bettye Sue Bedwell, Bedwell Law Firm, Inc., Trustee.

Philip F. Counce, Memphis, TN, for Debtors.

## ORDER SUSTAINING OBJECTION TO EXEMPTIONS

JENNIE D. LATTA, Bankruptcy Judge.

THE OBJECTION OF BETTYE SUE BEDWELL, Trustee in Bankruptcy (the "Trustee"), to the exemption claimed by the Debtors in four life insurance policies came on for hearing on May 9, 2013. Also pending is the motion of the Trustee to compel the Debtors to turn over the policies for liquidation and distribution of the net proceeds to creditors. The issue before the court is whether a debtor who is the owner but not the insured under a policy of life insurance may claim the exemption provided at Tennessee Code Annotated § 56–7–203. James E. Bailey, attorney, appeared for the Trustee. Phillip F. Counce, attorney, appeared for the Debtors.

### FACTS

The matter was submitted to the court on the following stipulated facts:

1. On January 12, 2013, Debtors filed a Voluntary Petition under chapter 7, title 11 of the United States Code (the "Bankruptcy Code"). [Dkt. Entry # 1].

2. Debtors listed on Schedule B–Personal Property, among other assets, an interest in several policies of life insurance and claimed an exemption in each on Schedule C–Property Claimed As Exempt un-

der Tennessee Code Annotated § 56–7–203 [Dkt. Entry # 1].

3. The Trustee timely filed an objection to Debtors' claims of exemptions [Dkt. Entry # 14] on March 15, 2013, as to four different life insurance policies that Debtors claimed as exempt. Debtors timely filed their response [Dkt. Entry # 23] on April 4, 2013, and subsequently amended same on April 9, 2013 [Dkt. Entry # 34].

4. The four life insurance policies were issued by The Northwestern Mutual Life Insurance Company. The policies were admitted into evidence as Exhibits A through D.

5. The policy referred to as Exhibit A insures the life of the Debtors' daughter, Elizabeth, and is owned solely by Mr. DeMarco, who is also the primary beneficiary. Mrs. DeMarco is the contingent beneficiary. The present cash surrender value of this policy is approximately $5,847.39. The ownership, beneficiary, and contingent beneficiary have not been changed since the policy was issued on September 17, 1984. Under paragraph 5.4 of the policy, the owner of the policy may surrender the policy for its cash surrender value, and withdrawal of the cash surrender value results in cancellation of the policy.

6. The policy referred to as Exhibit B insures the life of the Debtors' daughter, Maria, and is owned solely by Mr. DeMarco, who is also the primary beneficiary. Mrs. DeMarco is the contingent beneficiary. The present cash surrender value of this policy is approximately $3,889.58. The ownership, beneficiary, and contingent beneficiary have not been changed since the policy was issued on September 20, 1971. Under "Cash Value, Extended Term and Paid–Up Insurance," paragraph 2 of the policy, the owner of the policy may surrender the policy for its cash surrender value, and withdrawal of the cash surrender value results in cancellation of the policy.

7. The policy referred to as Exhibit C insures the life of the Debtors' daughter, Elizabeth, and is owned solely by Mr. DeMarco, and Mr. DeMarco and Mrs. DeMarco are primary beneficiaries. There is no contingent beneficiary named on this policy. The present cash surrender value of this policy is approximately $2,164.42. The ownership, beneficiary, and contingent beneficiary have not been changed since the policy was issued on September 14, 1999. Under paragraph 5.4 of the policy, the owner of the policy may surrender the policy for its cash surrender value, and withdrawal of the cash surrender value results in cancellation of the policy.

8. The policy referred to as Exhibit D insures the life of the Debtors' daughter, Maria, and is owned solely by Mr. DeMarco, who is also the primary beneficiary. Mrs. DeMarco is the contingent beneficiary. The present cash surrender value of this policy is approximately $49.45. The ownership, beneficiary, and contingent beneficiary have not been changed since the policy was issued on September 26, 2011. Under paragraph 5.4 of the policy, the owner of the policy may surrender the policy for its cash surrender value. and withdrawal of the

cash surrender value results in cancellation of the policy.

9. None of the policies vest or give the beneficiaries access to the cash surrender value until the death of the insured. Each of the policies does give Mr. DeMarco, as the owner of each of the policies, the unfettered right to surrender the policy and receive its cash value according to policy terms.

10. The Debtors state that the life insurance policies were purchased by Mr. DeMarco to make provision for himself and/or his spouse in the event of the death of a child. The Trustee, however, does not stipulate that the purposes asserted are in fact true or relevant to the determination of the exemption question.

## JURISDICTION

Jurisdiction over a contested matter arising under the Bankruptcy Code lies with the district court. 28 U.S.C. § 1334(b). Pursuant to authority granted to the district courts at 28 U.S.C. § 157(a), the district court for the Western District of Tennessee has referred to the bankruptcy judges of this district all cases arising under title 11 and all proceedings arising under title 11 or arising in or related to a case under title 11. *In re Jurisdiction and Proceedings Under the Bankruptcy Amendments Act of 1984,* Misc. No. 81–30 (W.D.Tenn. July 10, 1984). The determination of objections to exemptions are core proceedings arising under the Bankruptcy Code. *See* 28 U.S.C. § 157(b)(2)(B). The bankruptcy court has authority to enter an order determining whether a debtor is able to claim an exemption in particular property of the estate subject only to appellate review.

## ANALYSIS

■ Tennessee is an "opt out" state; thus Tennessee debtors must claim the exemptions provided by Tennessee law. *See* 11 U.S.C. § 522(b); Tennessee Code Annotated § 26–2–112. The Debtors claim that the four insurance policies are exempt from claims of creditors in their bankruptcy case by virtue of Tennessee Code Annotated § 56–7–203. That statute provides:

**56–7–203. Life insurance or annuity for or assigned to spouse or children or dependent relatives exempt from claims of creditors.**—The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person made for the benefit of, or assigned to, the spouse and/or children, or dependent relatives of the persons, shall be exempt from all claims of the creditors of the person arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to that person.

In support of their position, the Debtors rely upon the decision *In re Olien,* 256 B.R. 280 (Bankr.E.D.Tenn.2000). In that case joint debtors claimed an exemption in the cash surrender value of three life insurance policies. One was owned by the husband, who was the named insured. The primary beneficiary was his wife. The other two policies were owned by the wife, who was the named insured. The primary beneficiary was her husband. Under these facts, the court held that the debtors, as owners, were entitled to exempt the cash value of the policies, but that the debtors, as beneficiaries, were not entitled to any exemption.

The Debtors concede that the Debtors as beneficiaries have no interest in the insurance policies that could become prop-

erty of their bankruptcy estate.[1] Therefore, it is the interest of Mr. DeMarco as owner of the policies that is in dispute. The Debtors argue that the holding in *Olien* should be applied in the present case even though the owner of the policies and the insured are not the same person. There does not appear to be a decision by the Tennessee Supreme Court (or any other court) directed to the question presented in this case.

The decision in *Olien* turned on the referents of the term "person" in the applicable statute. The term "person" appears four times. For ease of discussion, the applicable parts of the statute will be separately listed to highlight the use of this term:

(1) The net amount payable under any policy of life insurance or under any annuity contract upon the life any **person,**

(2) made for the benefit of, or assigned to, the spouse and/or children, or dependent relatives of the **persons,**

(3) shall be exempt from all claims of the creditors of the **person,**

(4) arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to that **person.**

Counsel agree that the first and third instances of the term "person" refers to the insured. They also agree that the second instance, in which the term is used in the plural, refers to the spouse and/or children of the insured, i.e., the statute applies to a policy made for the benefit of, or assigned to, dependent relatives of the spouse and/or children of the insured.[2] Counsel

disagree about the referent for the fourth use of the term "person." Mr. Counce, as counsel for the Debtors, argues that the referent can only be the *owner* of the policy, whether or not that person is also the insured, and therefore, that the first and third instances should also be read to include an owner who is not the insured. Mr. Counce insists that since an insured who is not the owner of a policy of insurance would never have the right to change the named beneficiary, the fourth use of the term "person" must include the concept of ownership in reference to the insured. Therefore, he concludes that the drafters of the statute intended to include owners who *are not* the insured together with owners who *are* the insured in the class of persons whose interest in a policy is exempt from the claims of creditors.

In further support of their position, the Debtors rely upon an early decision of the Tennessee Supreme Court, *Lunsford v. Nashville Savings & Loan Corp.,* 9 Smith 179, 35 S.W.2d 395 (Tenn.1931). Construing a prior but substantially similar version of section 56–7–203, the court said:

At the time the statute in question was enacted, there was some doubt as to whether the creditors of the insured could appropriate the cash surrender value of a policy; that is, whether it was exempt from creditors, and, most likely, the statute was passed to remove any doubt as to that matter.

*Id.* at 395. The Debtors argue, in effect, that the statute resolved any doubt in favor of putting the cash surrender value of life insurance beyond the reach of any creditor.

---

1. Although not specifically addressed in the Stipulation of Facts, both of the Debtors' daughters, the named insureds, are living.

2. I am less inclined to think that this is the case than to think that the reference to "persons" is simply a matter of careless amendment. The reason for this will become clear.

Counsel for the Trustee disagrees with the position of the Debtors. Mr. Bailey argues that a plain reading of the statute indicates that it protects the net amount payable under any life insurance policy from creditors of the insured, and no one else. He suggests that this is easily demonstrated when the names of the parties to the insurance policies under consideration are substituted for the various instance of the term "person" or "persons" in the statute. This exercise renders the following reading:

> The net amount payable under any policy of life insurance or under any annuity contract upon the life of [**Elizabeth or Maria**] made for the benefit of, or assigned to, the spouse and/or children, or dependent relative of [**Elizabeth or Maria** (my reading) or **a dependent relative of the spouse and/or child of Elizabeth or Maria** (the parties' reading)], shall be exempt from all claims of the creditors of [**Elizabeth or Maria**] arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to [**Elizabeth or Maria**].

Mr. Bailey argues that the mere facts that the policies are not made for the benefit of, or assigned to the spouse and/or children of Elizabeth or Maria, and that the creditors in question are not those of Elizabeth or Maria, take the present policies out of the reach of the statute.

An even clearer demonstration of the meaning of the statute can be achieved if "insured" is substituted for each instance of the term "person" or "persons." This results in the following:

> The net amount payable under any policy of life insurance or under any annuity contract upon the life of **the insured** made for the benefit of, or assigned to, the spouse and/or children, or dependent relative of **the insured,** shall be exempt from all claims of the creditors of **the insured** arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to **the insured.**

Here it becomes clear that even though the statute does not contain the term "owner," it does make provision for one important right of the owner of a policy of life insurance: the right to change the named beneficiary. The statute makes provision for that right in the final clause to the effect that whether or not the insured has the right to change the beneficiary (i.e., is the owner of the policy), the net value of the policy is exempt from the claims of the insured's creditors. The statute can be read in more than one way. It can be read to include insureds who are owners, and it can be read to include insureds who are not owners. Mr. Counce argues that the statute can be read in yet one more way: so as to apply to owners who are not insureds.

In order to determine whether Mr. Counce's suggested reading is a possible reading, I will substitute the word "owner" for the term "person" in the final clause as he suggests should be done.

> The net amount payable under any policy of life insurance or under any annuity contract upon the life of **the insured** made for the benefit of, or assigned to, the spouse and/or children, or dependent relative of **the insured,** shall be exempt from all claims of the creditors of **the insured** arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to **the owner.**

Adding the term "owner" to the final clause does not change the effect of the statute. It still protects the spouse and

dependents of the *insured* against the claims of creditors of the *insured.* It does not protect the owner from creditors of the owner as owner.

The statute can be read in more than one way with respect to *what* is protected from creditors. The "net amount payable" can be read to refer to the "cash surrender value," or to the "proceeds payable on death," or both. I think that both readings are possible and were intended. Again, substituting the appropriate terms makes this clear and also helps to determine whether owners who are not insureds were intended to be included in the class of persons who can take advantage of the exemption provided in this statute. In the first instance, the statute protects the "cash surrender value":

> The **cash surrender value** under any policy of life insurance or under any annuity contract upon the life of **the insured** made for the benefit of, or assigned to, the spouse and/or children, or dependent relative of **the insured,** shall be exempt from all claims of the creditors of **the insured** arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to **the insured.**

Under this reading, the cash surrender value of policies of insurance are protected from the creditors of the insured during his lifetime, whether or not the insured has the right to change the beneficiary. Read this way, it is clear that this statute provides an important exception to the general rule that a person cannot place his assets beyond the reach of his creditors while retaining control over those assets.

In the second instance, the statute protects the "proceeds payable on death":

> The **proceeds payable on death** under any policy of life insurance or under any

annuity contract upon the life of **the insured** made for the benefit of, or assigned to, the spouse and/or children, or dependent relative of **the insured,** shall be exempt from all claims of the creditors of **the insured** arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to **the insured.**

In this reading, the statute protects the beneficiaries of a deceased insured from his creditors. In other words, the creditors may not augment the probate estate of an insolvent insured by insurance proceeds payable to his beneficiaries, whether or not the insured retained the right to change the beneficiary during his lifetime.

Both readings are possible and meaningful. During the lifetime of the insured, creditors of the insured cannot reach the cash surrender value of the policy, whether or not the insured may change the beneficiary. After the death of the insured, creditors of the insured cannot reach the proceeds payable on death.

■ For the statute to apply and the exemption to be available, one additional thing is required. That is that the policy be made for the benefit of the spouse and/or children or (other) dependent relatives of the insured. This highlights the intended purpose of this statute: to ensure that beneficiaries are not deprived of benefits as the result of the claims of creditors of the insured. The statute in its original form protected policies of life insurance or annuity contracts upon the life of "any person" made for the benefit of, or assigned to, "the wife or children, or dependent relatives of such persons." *Lunsford,* 35 S.W.2d at 395. Recall, of course, that when this statute was enacted—1925— wives *were* considered the dependents of their husbands. The statute was later

amended to substitute "spouse" for "wife," to include both husbands and wives as possible protected beneficiaries; it was also amended to substitute "and/or" for "or" to make clear that the policy or contract might be made for the benefit of the "wife and/or children" not simply for the "wife or children." The result of these amendments created the possible ambiguity in the third instance of the use of the term "persons." In its original version, the referent of the term "persons" is clearly "any person" upon whose life a policy of life insurance or contract of annuity is made. While this is interesting, it is not necessary to the outcome of this case. What is important is that the substitution of the term "spouse" for the term "wife" had the effect of broadening the statute to include spouses who are not (necessarily) dependents of the insured. The result *obscures* somewhat the *original* purpose of the statute: to protect the dependents of the insured from the claims of creditors of the insured.

Having said all of this, it is clear that the Trustee must prevail in this case for two reasons: First, for the reason that the policies were not made for the benefit of "spouse and/or children, or dependents" of the insured daughters of the Debtors, but for the benefit of the Debtors.[3] Second, for the reason that the creditors in question are not the creditors of the insureds, but are creditors of the Debtors. Mr. Counce argues that the statute also protects the owner of a policy of life insurance who is not the insured from the claims of *the owner's* creditors. This is simply not the case. The statute protects beneficiaries from creditors of the *insured* whether or not they are owners, but *does* not protect *owners* from their own creditors.

When they were originally purchased, the four insurance policies provided two benefits to the Debtors. They provided insurance against the possibility of the death of one or both of their children, and they built cash value for the benefit of their owner, Mr. DeMarco. Based upon the dates of the two oldest policies, it is clear that the Debtors' daughters are now adults and thus presumably no longer dependent upon their parents. While this is technically immaterial to the outcome in this case, it does highlight the current status of these policies. It is no longer necessary for the Debtors to provide for expenses that would arise in the event of the deaths of one or both of their daughters. Thus the insurance value, while still present, is not the primary value of these policies to the Debtors. Instead the primary value of the policies lies in their cash surrender value, which is under the complete control of Mr. DeMarco. Although he may be able to claim this value as exempt under some other provision of the Tennessee Code, he cannot do so under the statute that was intended to protect the spouse, children, or other dependents of the insured.

### CONCLUSION

For the foregoing reasons, the objection of the Trustee to the claimed exemption of the Debtors is **GRANTED**. The motion of the Trustee for turnover of the four policies of life insurance is likewise **GRANTED**. Mr. DeMarco is directed to turn over the policies of life insurance to the Trustee within twenty-one days of the entry of this order.

---

**3.** Of course, it is possible that the Debtors are dependents of their children, but this was not among the facts stipulated in this case.